**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

NEW BALANCE ATHLETICS, INC.,

    Plaintiff,

    v.

MICHAEL KORS (USA) INC.,

    Defendant.

C.A. No. 21-cv-11305

**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

1.    This is a trademark infringement case.  Plaintiff New Balance Athletics, Inc. ("New Balance") is a global footwear and apparel company. Defendant Michael Kors (USA) Inc. ("Michael Kors" or "Defendant") is a global footwear and apparel company.

2.    As described more fully below, New Balance has exclusively used the letter N as a trademark on footwear since the 1970s.  New Balance has sold hundreds of millions of pairs of shoes bearing N Marks worldwide, which represent many billions of dollars in sales.  It owns several federally registered and incontestable trademark registrations for the letter N on footwear and has strong common law and international rights in the same.  The marks are famous and embody an enormous amount of goodwill—they are among the company's most valuable assets.

3.    N Marks appear on a wide range of New Balance footwear, from performance footwear to lifestyle footwear.  For example:





4.      Defendant recently began using an N design on footwear that is virtually identical and confusingly similar to the New Balance N Marks:



5.      Defendant's use of a letter N on footwear: (i) is likely to cause confusion among consumers and/or suggest an affiliation, connection, or association between New Balance and Defendant; (ii) constitutes false designation of origin; and (iii) dilutes the distinctive quality of New Balance's famous N Marks.

6.      Defendant is aware of New Balance's use of the letter N.  Michaels Kors (the individual) is responsible for conceptualizing and directing the design of Michael Kors brand products; he is a well-known "fan" of New Balance.  *See, e.g.*, Exhibit A (*Vogue*: "It's a rare occasion you see Michael Kors out of his trusty New Balance sneakers."); (*Harper's Bazaar*: describing his "fashion uniform" and quoting "I probably have a good 15 pairs of New Balance in black, and I don't always wear black.  In the summer I'll go to this dusty putty color.  That's my summer shoe."); and (*New York Times*: describing Mr. Kors' "usual outfit," which includes New Balance sneakers).

7.      Prior to filing this complaint, New Balance provided Defendant with express notice of New Balance's rights and requested that it immediately cease use of the N design and account

for its sales.  Defendant refused.

8.     Defendant's conduct has irreparably harmed New Balance and will continue to irreparably harm New Balance and its substantial goodwill.  It also has caused and will continue to cause monetary harm in an amount to be determined at trial.

## PARTIES

9.     New Balance Athletics, Inc. is a Massachusetts corporation with its principal place of business at 100 Guest Street, Boston, Massachusetts 02135.

10.    Upon information and belief, Michael Kors (USA) Inc. is a Delaware corporation with its principal place of business at 11 West 42nd Street, New York, NY 10036.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1332(a)(2), 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.  Plaintiff New Balance Athletics, Inc. is a citizen of Massachusetts.  Upon information and belief, Defendant Michael Kors (USA) Inc. is a citizen of New York.  As such, there is complete diversity of the parties.  The matter in controversy exceeds $75,000, exclusive of interests and costs.

12.    Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because this is the judicial district where: (i) a substantial part of the events giving rise to the claims occurred; and (ii) where Defendant is subject to personal jurisdiction.

13.    Upon information and belief, Defendant regularly solicits and conducts business in Massachusetts.  Specifically, Michael Kors licenses, promotes, and sells its goods, including the infringing goods, within Massachusetts.  In addition, upon information and belief, Michael Kors employs individuals and operates Michael Kors brand stores in Boston, Newton, and Peabody,

Massachusetts and distributes to third-party retailers (e.g., Nordstrom, Macy's, and Bloomingdales), that also sell the infringing goods in Massachusetts.  Michael Kors also maintains a website available in Massachusetts that facilitates and/or enables users to purchase the infringing goods in and from Massachusetts.

## FACTS

14.    New Balance is a private company that was founded in 1906.  Today, New Balance is one of the largest athletic footwear and apparel companies in the world, offering products in more than 120 countries.  It has over 7,000 employees worldwide.

15.    Since its earliest days, New Balance has focused on fit and authenticity as its core brand message.  New Balance is one of the few athletic footwear manufacturers to make shoes in true width sizing, rather than the more common narrow and wide.  It is the only major company that manufactures athletic footwear in factories in the United States.  Because of its brand qualities, New Balance has some of the most brand-loyal customers in the marketplace.

16.    New Balance sells a complete line of performance footwear, including running, walking, hiking, basketball, baseball, soccer, tennis, and golf shoes.

17.    New Balance also sells lifestyle footwear that may have some performance characteristics but are popular because they are fashionable or "on trend."  New Balance footwear in its lifestyle category accounts for more than a billion dollars in annual revenue.

### New Balance's Intellectual Property

#### *The N Marks*

18.    In the 1970s New Balance released a new model (the 320) that was its first shoe to feature an N mark.  The shoe was an enormous success.  Its release benefitted from two coinciding events: the rising popularity of running, and its selection by *Runner's World* magazine as the best

running shoe in the world.

19.    Since that time, New Balance has exclusively used distinctive N marks to identify its goods.  The designs may vary slightly, but an N has appeared on the side of nearly all New Balance footwear sold for more than forty years.  In the aggregate, New Balance has used an N (typically in several places) on more than one billion products sold in the United States.

20.    The N Marks are such a key element of the brand that the company recently sold shoe models with interchangeable N logos, which allowed wearers to customize their look while remaining on brand:



Engaging the customer with the logo in this way uniquely communicates and emphasizes its independent source identifying quality.

21.    In addition to its use on footwear, New Balance uses its N Marks on a variety of related goods.  Since at least as early as 1996, New Balance has used the mark on a wide range of apparel.  For example:



22.    The N Marks also appear in virtually every New Balance footwear advertisement. For example:

  

  

23.     Apart from its use on goods in advertisements, New Balance has separately featured the N Marks in the "headline copy" of its advertisements.  For example:



24.     The N Marks are also used in numerous places on or in hundreds of stand-alone retail stores and third-party footwear and apparel retailers across the United States.

25.     In the past three years, New Balance has spent over $1 billion in marketing worldwide, with a substantial portion of the expenditures being directed to the United States and the vast majority used toward marketing and advertising that incorporates the N Marks.

26.     New Balance markets its brand in all channels, including television, print, digital, social media, and at point of purchase.  In the past decade, its marketing has made more than one billion consumer impressions.  Its website has more than thirty-five million annual visitors; its

Instagram account has more than six million followers; and its Facebook account has more than eight million followers.  All these channels prominently feature the N Marks.

27.     As a result of its long-standing, exclusive use of the distinctive N Marks in commerce in connection with footwear (and other goods), New Balance has acquired valid and strong common law trademark rights.

28.     New Balance's longstanding exclusive use, widespread marketing, and worldwide sales have made the N Marks famous.  Indeed, numerous footwear and fashion commentators have expressly identified the mark as "famous" or "iconic."  For example:

- "In 1976, New Balance launched the 320, the first New Balance sneaker to feature the now-famous 'N' logo."

- "Enter the 1970s and the running phenomenon explodes in the US. The famous letter 'N' was born on the New Balance shoe and the conscious decision to 'name' their shoes with numbers over model names."

- "The famous "N" logo is stitched onto the lateral side of the sneaker while sitting atop an ENCAP midsole for comfort and durability."

- "…the guy who first emblazoned the world famous 'N' on the lateral panels of their iconic new balance mens trainers."

- "The iconic N logo, collar strap, and rubber tongue label are reflective and pay homage to New Balance running models from the past."

- "In leading up to the release of the 990v4, press play below to hear Terry Heckler, the designer of New Balance's iconic "N" logo, speak on the inspiration behind his original design, the 990 and the history of the brand."

*See* Exhibit B.

29.     The Federal District Court for the District of Delaware has found the N Marks famous.  *See New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*, 424 F. Supp. 3d 334 (D. Del. 2019).

30.     New Balance owns an incontestable federal registration for the letter N for footwear as shown here:



*See* Exhibit C (U.S. Reg. Nos. 3,282,106).  It also owns an incontestable federal registration for the same letter N for apparel.  *See id.* (U.S. Reg. No. 4,477,442).

31.     New Balance also owns an incontestable federal registration for the letter N located on the side of shoe as shown here:



*See* Exhibit D (U.S. Reg. No. 1,308,133).

32.     New Balance also owns a federal trademark registration for the letter N for footwear shown here:



*See* Exhibit E (U.S. Reg. No. 6,354,028).

33.     In addition to its domestic registrations, New Balance owns trademark registrations for the letter N for footwear around the world, including in: Mexico, Japan, Australia, Canada, Chile, China, Hong Kong, New Zealand, Russian Federation, Singapore, South Africa, Albania, Armenia, Benelux, Bosnia-Herzegovina, Croatia, Czech Republic, Bulgaria, Estonia, India, South Korea, Finland, Kosovo, Latvia, Lithuania, Austria, North Macedonia, Montenegro, Norway, Poland, Serbia, Slovak Republic, Turkmenistan, Romania, Taiwan, Turkey, Vietnam, Argentina, Cuba, Colombia, Guatemala, Nicaragua, Panama, Paraguay, Peru, Uruguay, United Kingdom,

Iceland, Ireland, France, Germany, Spain, Denmark, Ukraine, Portugal, Venezuela, Greece, Egypt, Jordan, Lebanon, United Arab Emirates, Madagascar, Morocco, OAPI, Macao, Malaysia, Tunisia, Zambia, Zimbabwe, Oman,  Hungary, and Sweden.

### *The N Mark with Saddle Device*

34.     In addition to its independent existence as a trademark, the letter N is also an integral part of another of New Balance's trademarks—the N Mark with Saddle Device.

35.     Many of New Balance's most famous shoe designs feature an N combined with a unique saddle.  Generally, a "saddle" is a layered cut piece located at the mid-foot that wraps around top and bottom of the laces to the other side.

36.     New Balance's 620 model illustrates New Balance's distinctive saddle.  The saddle device is shown below outlined in double stitching:

 

37.     The 620 is an iconic New Balance model.  The design, which originated as a performance shoe in the 1980s, was more recently the subject of a collaboration with J. Crew where it was promoted as a lifestyle or fashion shoe.  The collaboration with J. Crew received enormous publicity—including the cover of J. Crew catalogs and articles in *Vogue*, *GQ*, and the *New York Daily News*.

38.     The New Balance 500 model also uses the N Mark with Saddle Device.



The 500 was inspired by the 620/574/576 family of shoe models and is enormously popular.

39.     The New Balance 990v1 model also uses the N Mark with Saddle Device.



The 990v1 is among the company's most well-known and iconic designs.  *See generally* Exhibit F.  The 990v1 was originally sold in 1978 and is sold today in exclusive, limited edition runs that sell out quickly.

40.     Numerous other New Balance models either use or have used a substantially identical N Mark with Saddle Device, including but not limited to the 300, 415, 425, 530, 995, 996, 1400, and Comp 100 models.

41.     As a result of its long-standing, exclusive use of the distinctive N Mark with Saddle Device in commerce in connection with footwear, New Balance has acquired valid and strong common law trademark rights in that mark, separate and in addition to New Balance's rights in the N alone.

42.     New Balance also owns an incontestable federal registration for the N Mark with Saddle Device as shown here (in stippling and solid lines):



*See* Exhibit G (U.S. Reg. No. 1,344,589).

### *The 574 Trade Dress*

43.     In addition to these N-formative trademarks, New Balance owns protectable trade dress rights in the overall design of its 574 model shoe.

44.     The New Balance 574 model is a lifestyle shoe that deliberately combines the unique design language of several famous New Balance models, including the 620 described above and the 576.



45.     The 574 is the company's best-selling shoe worldwide, with sales of more than 7,000,000 pairs projected in 2021.  It is one of the most popular athletic shoe designs sold by any manufacturer in the world.

46.     The design of the 574 model is widely regarded as iconic:

- **GQ:** one of the "ten most important sneakers of all time";

- **HighSnobiety:** "legendary silhouette";

- **InStyle:** "timeless" design;

- **Sneaker News:** one of the "brand's oldest and most beloved icons"; and

- **HypeBeast:** a "seminal" silhouette.

*See* Exhibit H.

47.    Since its launch, New Balance has spent millions of dollars to advertise the 574 model.  In addition, the 574 was the subject of a multi-million dollar campaign that was specifically designed to further associate the design with New Balance as its source.

48.    New Balance has been the exclusive user and source of the design since at least as early as the 1990s.

49.    The primary significance of the design is to identify New Balance as source.

50.    Based on its sales success, fame, and popularity, the 574 trade dress has acquired secondary meaning.

51.    New Balance's secondary meaning in the design is further evidenced by the fact that the design is frequently the subject of attempts to counterfeit it.  Since its release, New Balance has spent millions of dollars and thousands of hours protecting its rights in the 574 trade dress through legal actions, including seizures of counterfeit goods in Hong Kong and elsewhere.  It also has filed civil actions against well-known designers to protect its rights in the design.  *See, e.g.*, *New Balance Athletic Shoe, Inc. v. Lagerfeld, et al.*, Civ. A. No. 14-cv-03943 (S.D.N.Y.) and *New Balance Athletic Shoe, Inc. v. LVMH Moet Hennessy Louis Vuitton SA, et al*., Civ. A. No. 09-cv-11497 (D. Mass.).

52.    The overall design of the 574 is not functional in its combination of elements.

53.    By virtue of consumers' exclusive association of the non-functional design with New Balance, New Balance has developed protectable trade dress rights in its overall design, including the shape and style of construction (the "574 Trade Dress").

54.    The N Marks, N Mark with Saddle Device, and 574 Trade Dress embody enormous goodwill and are incredibly valuable assets of the company.

### *Collaborations with Third-Party Brands*

55.     Like many successful footwear brands, New Balance collaborates with well-known third-party designers and brands to develop special edition products that are widely covered in the footwear and fashion press and coveted by consumers.

56.     New Balance's collaborations with third-party designers and brands on special or limited editions of shoes bearing the N Marks include: J. Crew, Jaden Smith, Casablanca, Kith, atmos, Louis De Guzman, Todd Snyder, Mita, Concepts, Figs, Eric Hays, G Shock, crooked tongues, Ball and Buck, and Stray Rats.

57.     New Balance also collaborated with hat maker New Era on a limited-edition shoe/hat combination package that is expressly focused on the N logo. The package included a pair of New Balance shoes with interchangeable N logos. It also came with a "blank" New Era hat that also could attach the N logos:

 

*See* Exhibit I.

58.     New Balance also has collaborated with third-party designers and fashion brands with special edition 574 model shoes. New Balance's 574 model designer and fashion brand collaborators include J. Crew, Louis De Guzman, BAIT, Ronnie Fieg, CNCPTS, mita, and Todd Snyder.

59.     As a result of these successful collaborations, New Balance customers understand that the company often uses its trademarks and trade dress in collaboration with other designers and brands.

### Defendant and Its Infringing Conduct

60.     Upon information and belief, the Michael Kors brand was launched 40 years ago by Michael Kors, a fashion designer, who is responsible for conceptualizing and directing the design of Michael Kors brand products.  Among other goods, Michael Kors sells footwear and apparel.

61.     Upon information and belief, Defendant recently began selling Michael Kors brand footwear that uses an N design that is confusingly similar to the famous New Balance N Marks. Specifically, the Michael Kors "Pippin" and "Olympia" models use a prominent N design that is partially incorporated on the saddle:

| **Pippin** | **Olympia** |
|:---:|:---:|

 

 

 

 

62.     The Michael Kors N design is virtually identical to the famous N Marks and the N Mark with Saddle Device and is likely to cause confusion with New Balance.

63.     With respect to the Pippin shoe, consumer confusion is a near certainty because the Michael Kors N design appears in a virtually identical commercial context; namely, incorporated into the saddle of a shoe design that strongly evokes the New Balance 574 Trade Dress:

 

64.     Defendant's intentional adoption of a letter N on footwear is likely to cause confusion among consumers and/or suggest an affiliation, connection, or association between New Balance and Defendant.   Defendant's use of a letter N constitutes a false designation of origin. Defendant's use of a letter N on footwear is likely to dilute the distinctive source identifying quality of the famous N Marks.

65.     Upon information and belief, given New Balance's long-standing and widespread use of the N Marks, the N Mark with Saddle Device, and the 574 Trade Dress, Defendant must have known of New Balance's rights in the marks.   Also, given the fame of New Balance's N Marks, Defendant must have known of New Balance's rights in the mark.   In addition, given the registrations for the N Marks and N Mark with Saddle Device, Defendant had at least constructive

notice of New Balance's rights in those marks.  As a result, Defendant's infringement is intentional.  In addition, Defendant intended to dilute the distinctive source-identifying quality of the N Marks.

66.   Defendant's infringing goods and New Balance's goods are marketed and sold to overlapping classes of purchasers insofar as Defendant's products are lifestyle or fashion footwear and many of New Balance's products using the marks are in the same category.

67.   Defendant and New Balance advertise through overlapping marketing channels insofar as they use popular magazines and the Internet, including the same social media, to advertise the relevant goods.  In addition, the parties' relevant goods are routinely the topic of discussion in the same fashion magazines and on popular fashion websites, blogs, and social media posts.

68.   Defendant and New Balance sell the relevant goods through overlapping sales channels insofar as they both sell their goods through the same retail stores (e.g., Nordstrom and Macy's) and through the Internet.

69.   Upon information and belief, Michael Kors (the individual) is a well-known "fan" of New Balance, which increases the potential for consumers to mistakenly believe that the Michael Kors products are licensed by or affiliated with New Balance.  *See, e.g.*, Exhibit A (*Harper's Bazaar*: "I definitely have a fashion uniform — that is an understatement.  It is always something black and knitted with a crewneck.  And then either dark jeans, white jeans, olive cargos, or chinos.  The shoe changes.  It can go from a black crocodile Tod's driving loafer to a black New Balance sneaker that I have custom-made for me — all black on black on black. I probably have a good 15 pairs of New Balance in black, and I don't always wear black.  In the summer I'll go to this dusty putty color.  That's my summer shoe."; (*New York Times*: "Mr. Kors,

59, who built a multi-billion-dollar business off his beige off-the-shoulder sweaters, baby blue skirts and "Project Runway" witticisms, had on his usual outfit: a black trench coat, black sweater, vintage gold Ray-Ban sunglasses and a pair of Levi's, which he wore with New Balance sneakers."; and (*Vogue*: "It's a rare occasion you see Michael Kors out of his trusty New Balance sneakers. Even at this year's Met Gala he wore glorified trainers with metallic silver uppers and white rubber soles. The point is: Kors appreciates sporty comfort, a quality in no short supply in his new men's collection for Spring.").

70.   Upon information and belief, like New Balance, Michael Kors is also well-known for its collaborations with others.  Michael Kors' personal association with New Balance and his brand's participation in collaborations significantly increases the likelihood of consumer confusion concerning an affiliation, connection, or association between New Balance and Defendant because consumers are likely to believe that New Balance authorized or licensed Michael Kors to use its famous N Marks and its N Mark with Saddle Device on its shoes.  Had New Balance authorized Defendant to design special edition products, it might have been a highly successful collaboration—like New Balance's collaborations with J. Crew, Jaden Smith, Casablanca, Kith, atmos, Louis De Guzman, Todd Snyder, and others.  New Balance, however, never authorized or licensed Defendant to use its trademarks.

71.   Defendant's use of a letter N on footwear is likely to cause point-of-sale, initial interest, and post-sale confusion, to the irreparable harm and detriment of New Balance and the substantial goodwill it has developed in its trademarks.

72.   As a result of the foregoing, New Balance has suffered and will continue to suffer irreparable harm and monetary harm in an amount to be determined at trial.

## COUNT I
### (Trademark Infringement—15 U.S.C. § 1114)
### (The N Marks and the N Mark with Saddle Device)

73. New Balance repeats and realleges the allegations contained in paragraphs 1 through 72 above as if fully set forth herein.

74. As described above, New Balance owns the distinctive and federally registered N Marks as depicted in at least U.S. Reg. Nos. 3,282,106; 1,308,133; and 6,354,028 and the N Mark with Saddle Device as depicted in U.S. Reg. No. 1,344,589.

75. New Balance's ownership and exclusive use in commerce of the N Marks and the N Mark with Saddle Device predates the use by Defendant of its N design on footwear.

76. Upon information and belief, Defendant's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks and the N Mark with Saddle Device. Defendant is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Defendant's conduct is therefore also willful and intentional.

77. Defendant uses its N design in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its footwear.

78. With respect to the Pippin shoe, the Michael Kors N design appears in a virtually identical commercial context; namely, incorporated into the saddle of a shoe design that strongly evokes the New Balance 574 Trade Dress.

79. Defendant's use in commerce of its N design in connection with footwear, as described above, constitutes infringement of at least the trademarks that are the subjects of U.S. Reg. Nos. 3,282,106; 1,308,133; 6,354,028 and 1,344,589, in violation of 15 U.S.C. § 1114, in that it is without New Balance's consent and is likely to cause confusion, mistake, and/or deception among consumers.

80.     As a direct and proximate result of Defendant's violations of 15 U.S.C. § 1114, New Balance has been and will continue to be damaged.

81.     Upon information and belief, Defendant has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

82.     Defendant's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Defendant is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

## COUNT II
### (False Designation of Origin—15 U.S.C. § 1125(a))
### (The N Marks and N Mark with Saddle Device)

83.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 82 above as if fully set forth herein.

84.     As described above, New Balance owns valid and protectable rights in the distinctive N Marks and N Mark with Saddle Device for footwear.

85.     New Balance's ownership and exclusive use in commerce of the N Marks and N Mark with Saddle Device for footwear predates the use by Defendant of its N design on footwear.

86.     Upon information and belief, Defendant's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks and the N Mark with Saddle Device.  Defendant is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Defendant's conduct is therefore also willful and intentional.

87.     Defendant uses the N design in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its footwear.

88.     With respect to the Pippin shoe, the Michael Kors N design appears in a virtually

identical commercial context; namely, incorporated into the saddle of a shoe design that strongly evokes the New Balance 574 Trade Dress.

89.     Defendant's use in commerce of the N design on footwear, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with New Balance and/or as to the origin, sponsorship, or approval by New Balance of Defendant's goods, services, or commercial activity.

90.     As a direct and proximate result of Defendant's violations of 15 U.S.C. § 1125, New Balance has been and will continue to be damaged.

91.     Upon information and belief, Defendant has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

92.     Defendant's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Defendant is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

### COUNT III
### (Dilution—15 U.S.C. § 1125(c))
### (The N Marks)

93.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 92 above as if fully set forth herein.

94.     As described above, New Balance owns the distinctive and federally registered N Mark as depicted in at least U.S. Reg. Nos. 3,282,106 and 1,308,133.

95.     New Balance's ownership and exclusive use in commerce of the N Marks predates the use by Defendant of its N design on footwear.

96.     Through consistent and continued use, product promotion, and consumer and industry recognition, New Balance has developed the N Marks to the point that they are famous. Defendant did not begin using the N design in commerce until after the N Marks became famous.

97.     Upon information and belief, Defendant's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks. Defendant is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Defendant's conduct is therefore also willful and intentional.

98.     Defendant's use of the N design is likely to cause dilution of the distinctive qualities of the N Marks in violation of 15 U.S.C. § 1125(c).

99.     As a direct and proximate result of Defendant's violations of 15 U.S.C. § 1125, New Balance has been and will continue to be damaged.

100.    Upon information and belief, Defendant has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

101.    Defendant's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Defendant is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

**COUNT IV**
**(Massachusetts Statutory Dilution—Mass. Gen. L. C. 110H § 13)**
**(The N Marks and the N Mark with Saddle Device)**

102.    New Balance repeats and realleges the allegations contained in paragraphs 1 through 101 above as if fully set forth herein.

103.    As described above, New Balance owns valid and protectable rights in the distinctive N Marks and the N Mark with Saddle Device for footwear.

104.     New Balance's ownership and exclusive use in commerce of its N Marks and the N Mark with Saddle Device for footwear predates the use by Defendant of the N design on footwear.

105.     Upon information and belief, Defendant's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks and the N Mark with Saddle Device.  Defendant is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Defendant's conduct is therefore also willful and intentional.

106.     Defendant's adoption and use of a confusingly similar N design as described above, constitutes statutory dilution in that it is without New Balance's consent and has created and will continue to create a likelihood of injury to New Balance's reputation and/or a likelihood of dilution of the distinctive quality of the N Marks and the N Mark with Saddle Device in violation of Mass. Gen. Laws ch. 110H § 13.

107.     As a direct and proximate result of Defendant's dilution of the N Marks and the N Mark with Saddle Device, New Balance has been and will continue to be damaged.

108.     Defendant's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Defendant is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

### COUNT V
### (Common Law Trademark Infringement/Passing Off)
### (The N Marks and the N Mark with Saddle Device)

109.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 108 above as if fully set forth herein.

110.     As described above, New Balance owns valid and protectable rights in the distinctive N Marks and the N Mark with Saddle Device for footwear.

111.    New Balance's ownership and exclusive use in commerce of its N Marks and the N Mark with Saddle Device for footwear predates the use by Defendant of its N design on footwear.

112.    Upon information and belief, Defendant's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks and the N Mark with Saddle Device.  Defendant is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Defendant's conduct is therefore also willful and intentional.

113.    With respect to the Pippin shoe, the Michael Kors N design appears in a virtually identical commercial context; namely, incorporated into the saddle of a shoe design that strongly evokes the New Balance 574 Trade Dress.

114.    Defendant's adoption and use of a confusingly similar N design in Massachusetts and elsewhere in connection with the sale, offering for sale, distribution, and/or advertising of its footwear is likely to cause confusion among relevant consumers.

115.    Defendant's use of a confusingly similar mark, as described above, constitutes common law trademark infringement and passing off in that it is without New Balance's consent and is likely to cause confusion, mistake, and/or deception among consumers, all to the irreparable injury of New Balance and the goodwill it has developed in the N Marks and the N Mark with Saddle Device.

116.    As a direct and proximate result of Defendant's conduct, New Balance has been and will continue to be damaged.

117.    Upon information and belief, Defendant has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of

its wrongful conduct.

118.    Defendant's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Defendant is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, New Balance respectfully requests the following relief:

A.    That this Court enter judgment that: (i) Defendant has infringed the N Marks and N Mark with Saddle Device in violation of 15 U.S.C. § 1114; (ii) Defendant's use of the N design constitutes false designation of origin in violation of 15 U.S.C. § 1125; (iii) Defendant has diluted the N Marks in violation of 15 U.S.C. § 1125(c); (iv) Defendant has diluted the N Marks and N Mark with Saddle Device in violation of Mass. Gen. L. C. 110H § 13; (v) Defendant's use of the N design constitutes common law trademark infringement and passing off; and that all of the foregoing wrongful activities by Defendant were willful;

B.    That this Court enjoin Defendant, its employees, agents, servants, and all in privity or acting in concert with any of them, from using the N design, or any derivative(s) thereof or any design(s) confusingly similar thereto, in commerce on or in connection with Defendant's footwear;

C.    That this Court enter an injunction against further infringement, false designation of origin, and dilution by Defendant and its employees, agents, servants, and all in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of the N Marks and N Mark with Saddle Device;

D.    That this Court enter an order recalling all of Defendant's products bearing the N design presently manufactured, sold, and/or distributed, and providing for a full refund for all

recalled infringing products;

E.     That this Court enter an order directing the destruction of: (i) all infringing products, including all recalled infringing products; (ii) any other footwear products that use a copy, reproduction, or colorable imitation of the N Marks and N Mark with Saddle Device in Defendant's possession or control; (iii) all advertising materials related to the infringing products in Defendant's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

F.     That this Court require an accounting of profits by Defendant;

G.     That this Court award New Balance Defendant's profits, New Balance's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorneys' fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), 1116, and/or 1117; and

H.     That this Court award New Balance such other and further relief that this Court deems just and proper.

## JURY DEMAND

New Balance demands a trial by jury of all claims so triable.

****

Respectfully submitted,

NEW BALANCE ATHLETICS, INC.
*By its attorneys*,

/s/ Mark S. Puzella
ORRICK, HERRINGTON & SUTCLIFFE LLP
Mark S. Puzella (BBO# 644850)
R. David Hosp (BBO# 634091)
Sheryl K. Garko (BBO# 657735)
222 Berkeley Street
Boston, MA, 02116
Telephone:  617.880.1800
mpuzella@orrick.com
dhosp@orrick.com
sgarko@orrick.com

Dated: August 11, 2021